UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TTMI SARL,

                                    Plaintiff,                          Case No.:

          - against -                                                   **VERIFIED COMPLAINT**

HOLT GLOBAL LTD,

                                    Defendant.
-----------------------------------------------------------------X

Plaintiff TTMI SARL ("Plaintiff"), by and through its attorneys, Clyde & Co US LLP, as

and for its Verified Complaint against the Defendant HOLT GLOBAL LTD ("Defendant"),

alleges upon information and belief as follows:

1.          This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and also falls under this Court's admiralty and maritime

jurisdiction pursuant to 28 U.S.C. § 1333.

2.          At all times material hereto, Plaintiff was and is a foreign business entity duly

organized and existing under the laws of Switzerland.

3.          Upon information and belief, at all times material hereto, Defendant was and is a

foreign business entity duly organized and existing under the laws of the British Virgin Islands.

4.          This action involves claims for damages Plaintiff sustained for demurrage

incurred with respect to the "BIC IRINI" (the "Vessel").

5.          On or about February 13, 2009, Plaintiff, as Disponent Owner, and Defendant, as

Charterer, entered into a Charter Party pursuant to which Plaintiff chartered the Vessel to

Defendant to transport fuel oil from the STS Tropic Brilliance to Singapore.  Copies of the

Fixture Recap and the Additional Terms to the Charter Party are attached hereto as Exhibit "A" (together with the referenced Charter Party, the "Agreement").

6.     Pursuant to the Agreement, it was Defendant's responsibility to load and unload the cargo at the load and discharge ports within the 84 hour laytime set forth in the Agreement. *See* Fixture Recap, Exhibit "A" hereto, p. 4.

7.     The agreed rate for demurrage was $25,000 per day.  *See* Fixture Recap, Exhibit "A" hereto, p. 4.

8.     Defendant breached the Agreement by failing to load and unload the cargo within the allowed laytime.

9.     Defendant used 13 days, 9 hours and 27 minutes to load and unload the cargo, resulting in demurrage of 9 days, 21 hours and 27 minutes.

10.     As a result of Defendant's breach of the Agreement, Plaintiff suffered damages for demurrage in the total principal amount of $23,489.36, exclusive of interest, costs and attorneys fees, calculated as follows:  9 days, 21 hours and 27 minutes (demurrage) multiplied by $25,000 = $247,343.75  minus  $217,670.80  (monies  on  account)  minus  $6,183.59  (commission)  = $23,489.36.  A copy of the Demurrage & Laytime Report itemizing the demurrage claim is annexed hereto as Exhibit "B."

11.     Defendant breached the Agreement when, without authority and despite due demand, it failed to pay Plaintiff the $24,489.36 due and owing Plaintiff in accordance with the terms of the Agreement.

12.     Plaintiff has complied with all terms and obligations of the Agreement.

13.     The Agreement provides that disputes arising under the Agreement are to be submitted to London Arbitration with English Law to apply.

14.     Plaintiff is in the process of commencing London Arbitration.

15.     Interest, costs and attorneys' fees routinely are awarded to the prevailing party in pursuant to English Law.  As best as can now be estimated, Plaintiff expects to recover the following amounts:

| | | | |
|---|---|---|---|
| A. | Principal claim | $ | 23,489.31; |
| B. | Estimated interest on claim- | | |
| | 24 months at 6.5% compounded quarterly; | $ | 3,233.05; |
| C. | Estimated attorneys' fees and expenses: | $ | 43,774.30; |
| | Total: | $ | 70,496.66 |

16.     Upon information and belief, Defendant is and during the pendency of this litigation will continue to be engaged in international maritime commerce.

17.     International business transactions such as those engaged in by Defendant in the regular course of its business operations frequently require payments to be made in U.S. Dollars. *See e.g.*, Fixture Recap, Exhibit "A" hereto, pp. 3-4, requiring payment of freight and demurrage in U.S. Dollars.

18.     Upon information and belief, because Defendant is and will continue to be during the pendency of this litigation engaged in international commerce, it will continue to enter into business transactions requiring that the payments be made in U.S. Dollars.

19.     Upon information and belief, U.S. Dollar payments made pursuant to international commercial transactions of the type engaged in by Defendant frequently are made via electronic fund transfers in U.S. Dollars.  Approximately 95% of all electronic funds transfers between non-U.S. parties transacting business in U.S. Dollars are made via the Clearing House Interbank Payments System ("CHIPS").  These payments involve routing the electronic

3

funds transfers through a CHIPS participating bank, usually located in New York City, operating as an intermediary bank, in order to convert the foreign currency into U.S. Dollars.

20.     Upon information and belief, because Defendant is and will continue to be during the pendency of this litigation engaged in international commerce, it will continue to make or receive some or all of the payments involved in that commerce in U.S. Dollars, and some or all of those payments will be made via electronic funds transfers processed through the CHIPS system, and will be routed through a CHIPS participating bank located in New York City (within this District) in order to convert the foreign currency into U.S. Dollars.

21.     Under the law of the Second Circuit, electronic funds transfers to or from a party in the hands of an intermediary bank are considered to be the property of that party and can be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir. 2006).

22.     Accordingly, upon information and belief, Defendant has or will have during the pendency of this litigation assets in this District in the form of electronic funds transfers at banks located in this District.

23.     The Defendant cannot be found within this District within the meaning of Rule B but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

24.     The Plaintiff seeks an order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching any assets

of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claims as described above.

WHEREFORE, Plaintiff prays as follows:

A.    That process in due form of law issue against Defendant, citing Defendant to appear and answer under oath all and singular the matters alleged in the Verified Complaint failing which default judgment be entered against it in the sum of $70,496.66;

B.    That since the Defendant cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all goods, chattels, credits, letters of credit, bills of lading, effects, electronic fund transfers, debts and monies, tangible or intangible, or any funds up to the amount of $70,496.66 belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit, at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

D.    That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

E.     That in the alternative, this Court enter Judgment against the Defendant on the claims set forth herein;

F.     That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

G.     That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: October 2, 2009
       New York, New York

CLYDE & CO US LLP

By: _____
Christopher Carlsen (CC 9628)
405 Lexington Avenue
New York, New York 10174
Tel: (212) 710-3900
Fax: (212) 710-3950
Christopher.carlsen@clydeco.us

Attorneys for Plaintiff

## VERIFICATION

STATE OF NEW YORK     )
                             ) ss.:
COUNTY OF NEW YORK   )


1.      My name is Christopher Carlsen.

2.      I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.      I am a member in the firm of Clyde & Co US LLP, attorneys for the Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.      The source of my knowledge and the grounds for my beliefs are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:        October 2, 2009
                 New York, New York

                                        Christopher Carlsen

Sworn to before me this 2nd day of October, 2009

Notary Public

DANIEL CORRELL
Notary Public, State of New York
No. 02CO6102892
Qualified in Nassau County
Commission Expires Dec. 5, 2011

EXHIBIT A

## Magali, Nicholas

| | |
|---|---|
| **From:** | Thies Petersen - RIVERLAKE SHIPPING SA [petersen@riverlake.ch] |
| **Sent:** | Friday, February 13, 2009 1:18 PM |
| **To:** | Hatzimihalis, Michael; Ore Bulk Oil |
| **Subject:** | BIC IRINI / HOLT GLOBAL CP 13/02/2009 CHOPT F/C FUEL BSEA/EAST L/C 24-26 FEB 2009 - RECAP SUBS LIFTED |

**Attachments:** TTMI HOLT GLOBAL TERMS.doc; Bic Irini_Q88.htm; IOPP.pdf

TO TTMI SARL ATTN MAKIS PLS
CC RLS OPS   ATTN JEANNE PLS

pleased to confirm following fixture with all subs lifted as
per your authority and charter party dated 13th of february 2009

owner warrant vsl will have valid clbc certificate on board within
the 24th of February

charterers            : Holt Global Ltd
                       Akara Building,
                       24 de castro street,
                       Wickhams Cay 1 Road Town,
                       Tortola BVI,
disponent owners   : TTMI sarl, 15-17 rue du cendrier,
                       ch 1211, Geneva, Switzerland
broker               : Sernavimar srl
co-broker            : Riverlake
private and confidential: yes
charter party        : bpoy 4

VESSEL   : Bic Irini
EX-NAME   : Amore mio / Victoria Spirit
SDWT     : 103153 MT
SDRAFT    : 14.817 M
LOA       : 243.57 M
BEAM      : 42.03 M
FLAG      : Bahamas
BUILT     : Jan 15, 1993
CLASS     : Det Norske Veritas
STOPPERS   : 2 x 200 MT - PAWL9TONGUE0
CHAIN SIZE  : 76 MM
CUBIC 98 PCT : 121823 M3

10/1/2009

SLOP 98 PCT  : 1811 M3
SEGREGATIONS : 3
PUMPS      : 3 x 3000 Cu. Metres/Hour (Centrifugal)
TPC/TPI    : 90 MT / 228.6 MT
BCM        : 123.5 M
KTM        : 50.4 M
IGS        : Yes
COW        : Yes
SBT/CBT    : SBT
VRS        : Yes
GRT        : 63709
NRT        : 27575
PCNT       : 0
SCNT       : 55661.58
DERRICKS   : 0 x MT
CRANES     : 1 x 15 MT
COATED     : TAR EPOXY
HULL       : Double Hull
CALL SIGN  : C6LJ6
P AND I    : GARD
QUALIFIED IND: O'BRIEN'S GROUP
ISPS       : Oct 17, 2012


tbook: via Sire

otherwise as per attached q88

last 3c: fuel oil/dry/dry


for 1 voyage

----------------------------------------------

                (cargo)

cargo quantity    : charterers option to full cargo

grade        : fuel oil Max intakes basis FO dens 0.98,
               Temp 135 F, no restriction : about 100.000 mts

segregation      : 1/2 grades wvns

heat         : vessel to maintain loaded temperature
               but maximum 135degf.
               maximum loaded temperature 165degf

----------------------------------------------

                (dates)

laydays         : 24-26 February 2009 (00:01-23:59)


10/1/2009

itinerary            : vsl spot cmed

--------------------------------------------------------------------

                    (geographical)

loading range        : 1/2 ship to ship Kerch

discharging range        : 1 safe port - ship to ship Fujairah-Khor
                    Fakkan rge

or chopt          1/2 safe port(s) - ship to ship Singapore-
                South china range (Huangpu-Hong Kong
                rge) excluding Chinese river ports
                Huang pu not to be considered as a river
                port. always including Karimun Island,
                Pasir Gudang, TJ Pelapas, wc Malaysia

chtrs to declare discharge range upon clearing suez canal
southbound failing which Fujairah discharge option is lost

chtrs to declare singapore or south china range upo vsl passing
gulf of Aden failing which south China option is lost

--------------------------------------------------------------------

                    (financial)

freight rate        : lumpsum - inclusive of suez canal transit
                cost - usd 1,900,000 bss spore, wc
                malaysia, karimun, p.gudang, t.pelepas.

                lumpsum - inclusive of suez canal transit
                cost - usd 1,750,000 bss Fujairah-Khor
                Fakkan rge

                if discharge east of Singapore then
                freight to be calculated asf:
                lumpsum agreed for Singapore less
                15,000 dollars plus following formula:
                min 80,000 mts at ws 80 overage at 50 pct
                with flat rate bss load Singapore to last
                discharge port

Freight plus undisputed demurrage incurred waiting transit at the
Turkish Straits and at loadport to be paid BBB

Demurrage at disport to be paid every 3 days on account

if second load/discharge port will be used then interim port clause (to be agreed) to apply

should vsl load prior agreed laycan freight to be discounted by usd 12,500 pdpr for each day of earlier loading

10/1/2009

if discharge at sts freight to be reduced by USD 15.000 but all expenses including agency fee to be for charterers acc and settle directly by them

at loadport Kerch all costs included in the lumpsum agreed

above l/s rate is bss 1 load / 1 disch

overage            : n/a as lumpsum

demurrage rate     : usd 25,000 pdpr

laytime            : 84 hours shinc

--------------------------------------------------------------------

banking details for freight payment :

        freight payble to:

        account name: ttmi sàrl
        account number: 1088103
        bank: jp morgan chase bank
        location: new york, new york, usa
        swift code: chasus33
        aba #: 021000021

terms as attached

--------------------------------------------------------------------
            (commission)

2,50 pct address commission
1,25 pct to sernavimar srl on freight, deadfreight, demurrage
1,25 pct to Riverlake on freight, deadfreight, demurrage

Thanks VM

Rgds Thies

DISCLAIMER
This E-mail is private and confidential and may be covered by legal professional privilege. It is therefore only intended for the addressee(s). If you are not one of those persons you must not read, copy, store, disclose, use or distribute its contents. Please also contact the sender immediately and delete the original.

10/1/2009

(terms)

ANY EXTRA SECURITY COST FOR TRANSITING THE GULF OF ADEN TO BE PAID
50/50 BETWEEN OWNERS AND CHARTERERS.CHARTERES TO REIMBURSE OWNER OF
THE MENTIONED COSTS TOGETHER WITH THE FREIGHT AGAINST SUPPORTING
DOCUMENTS

- AWIWL

- L/D PORT(S) ALWAYS IN GEO ROTATION

- BIMCO ISPS + ISM CLS TO APPLY

- VESSEL TO ARRIVE AT LOADPORT/STS WITH TANKS DE-INERTED FOR PHYSICAL
INSPECTION ALL TIME FOR RE-INERTING TO BE FOR CHARTERERS ACC .

- VESSEL HAS HEAT EXCHANGERS

- VESSEL WILL HAVE ABT 300CM SLOPS ONBOARD

- OWNERS OPTION TO BUNKER ENROUTE TO THE DISCHARGE PORT.

- MAX 3 HRS AWAITING CARGO DOCS FOR OWNERS ACCT

- ANY DUES/TAXES OF WHATSOEVER NATURE ASSED OR CALCULATED ON CARGO
AND/OR FREIGHT TO BE

  FOR CHRS ACCT, UNLESS COVERED BY WORLDSCALE.

- CHRTRS AGENTS LOAD AND DISCHARGE.

- GA ARB LONDON

- ENGLISH LAW

- Y/A RULES OF 1974 AS AM 1994

- WS T/C

CANCELLING CLAUSE

IF IT APPEARS TO OWNERS THAT THE VESSEL WILL BE DELAYED BEYOND THE
CANCELLING DATE, OWNERS WILL NOTIFY CHARTERERS OF THE DATE ON WHICH
THEY EXPECT THE VESSEL TO BE READY TO LOAD WHEREUPON CHARTERERS HAVE
THE OPTION TO CANCEL THIS CHARTER AND SUCH OPTION TO BE DECLARED
WITHIN 24 HOURS, SUNDAYS AND LDN HOLIDAYS EXCLUDED, OF THE RECEIPTIF
SAID NOTIFICATION FROM OWNERS. IN THE EVENT THE OWNERS HAVE GIVEN
SUCH NOTIFICATION AND CHARTERERS HAVE NOT EXERCISED THEIR OPTION TO
CANCEL WITHIN THE STATED PERIOD, THE SECOND DAY AFTER READINESS
STATED IN OWNER'S NOTIFICATION, OR SUCH OTHER DATE AS MAY BE MUTUALLY
AGREED, SHALL BE THE NEW CANCELLING DATE

INTERIM LOAD/DISCHARGE CLAUSE

"CHARTERERS TO PAY FOR ADDITIONAL INTERIM LOAD/DISCH PORT AT COST
WITH ADDITIONAL STEAMING TIME TO BE INCURRED FOR SUCH DEVIATION WHICH
EXCEEDS DIRECT PASSAGE FROM FIRST LOADPORT TO FINAL DISCHPORT. TIME
TO COUNT FROM ARRIVAL PILOT STATION INTERIM LOAD/DISCHARGE PORT UNTIL
DROPPING LAST OUTWARD PILOT INTERIM LOAD/DISCH PORT I.E. NO ALLOWANCE
FOR NOTICE TIME, NOR DEDUCTION FOR SHIFTING EVEN FROM ANCHORAGE TO
FIRST BERTH AND NO DEDUCTION FOR TIME LOST DUE TO TIDE, SEA AND
WEATHER CONDITIONS. DEVIATON AND TIME USED TO BE CALCULATED AT
DEMURRAGE RATE PER DAY PRO RATA PLUS COST FOR ADDITIONAL BUNKERS
CONSUMED AS PER MASTERS EMAIL STATEMENT (original paper to follow IF
AVAILABLE). DEVIATION, TIME USED, BUNKERS CONSUMED (price to be as
per last bunker invoice) AND PORT COSTS AS PER AGENTS D/A TO BE PAID
DIRECTLY BY CHARTERERS


STS/LIGHTERING CLAUSE -
- - - - - - - - - - - - - - - - - - - - - - - -
CHARTERERS' OPTION TO PARTIALLY OR FULLY LOAD/DISCHARGE THE VESSEL
VIA A SHIP TO SHIP TRANSFER AT A SAFE LOCATION, OFF OR AT ANCHORAGE
IN ANY LOAD/DISCHARGE PORT (WHETHER INSIDE OR OUTSIDE THE PORT), NOT
EXPOSED TO TRAFFIC AND WEATHER PERMITTING. THE DETERMINATION OF THE
ADEQUACY OF THE ABOVE IS SUBJECT TO MASTER'S APPROVAL WHICH IS NOT TO
BE UNREASONABLY WITHHELD.
STS OPERATION TO BE EFFECTED ONLY AT ANCHOR AND MOORING / UNMOORING
MANEUVERINGS SHALL BE UNDER PILOTS' INSTRUCTIONS AND SUFFICIENT TUGS
ASSISTANCE (AT CHARTERERS TIME COST AND EXPENSE) CHARTERERS WILL
PROVIDE THE LIGHTERS, ALL SUITABLE FENDERS, HOSES AND ANY OTHER
EQUIPMENT TO SAFELY PERFORM LOAD AND DISCHARGE OPERATIONS AT THEIR
TIME, COST AND EXPENSE. PRINTED CLAUSES 14'(B)(II) AND 15(A)(II) ARE
NOT APPLICABLE IN THIS CASE. ALL TIME COMMENCING FROM VESSEL'S
ARRIVAL AT THE PORT OR PLACE OR THE AREA (AT A LOCATION OF WHICH STS
IS TO BE PERFORMED) INCLUDING ALL TIME THE VSL HAS TO WAIT BEFORE SHE
GETS TO THE ACTUAL STS LOCATION UNTIL VESSEL'S BREAK FREE OR ANY
LIGHTERING EQUIPMENT SUPPLIED BY CHRTRS OR THEIR AGENTS (SUCH AS
FENDERS ETC) IS DELIVERED BACK, WHATEVER IS LATER, SHALL RUN
CONTINUOUSLY WITHOUT INTERRUPTION (UNLESS DUE TO VSL ENGINE FAILURE)
AND SHALL COUNT AS FULL LAYTIME USED OR DEMURRAGE IF VESSEL ALREADY
ON DEMURRAGE. ALL EXPENSES FOR STS OPERATION INCLUDING BUT NOT
LIMITED TO TUGS, PILOTAGE (INCLUDING TUGS AND PILOTS USED TO ANY
PASSAGE FROM THE WAITING TO THE STS LOCATION AND BACK), STANDBY
SAFETY VESSELS TO BE FOR CHARTERERS ACCOUNT.
ALL FEEDER SHIPS TO BE ACCEPTABLE TO THE HEAD OWNERS WHICH ACCEPTANCE
NOT TO BE UNREASONABLE WITHHELD


- TURKISH STRAITS CLAUSE
- - - - - - - - - - - - - - - - - - - - - - - - - -

NOTWITHSTANDING ANYTHING TO THE CONTRARY ELSEWHERE HEREIN CONTAINED
IF THE VESSEL COMMENCES THE BALLAST VOYAGE (AS PER ITINERARY ADVISED
ABOVE) IN TIME TO ARRIVE AT THE LOADPORT WITHIN THE CANCELLING DATE,
IE ARRIVAL CANAKKALE LATEST BY NOON LT ON 20TH FEB 2009, BUT IS
DELAYED BECAUSE OF THE TRAFFIC REGULATIONS OR NAVIGATIONAL
DIFFICULTIES (INCL.BAD WEATHER, FOG ETC.) THROUGH THE TURKISH STRAITS
NORTH-BOUND SUCH THAT VESSEL MAY NOT ARRIVE BY THE CANCELLING DATE
CHARTERERS'OPTION TO CANCEL AS PROVIDED ELSEWHERE HEREIN CANNOT BE
EXERCISED.OWNERS TO NOTIFY CHARTERERS OF THE DATE AND TIME THAT THEY
EXPECT THE VESSEL TO BE READY TO LOAD BASED ON THE ADVISORY POSITION
GIVEN BY THE TRAFFIC CONTROL.
NOTWITHSTANDING ANYTHING TO THE CONTRARY ELSEWHERE HEREIN CONTAINED,
IF THE VESSEL SHOULD BE DELAYED DURING TANKER PASSAGE OR OTHERWISE AS
A CONSEQUENCE OF DIRECT OR INDIRECT ACTION OF THE TURKISH AUTHORITIES

```
AND/OR OBSERVING TRAFFIC REGULATIONS AND/OR NAVIGATIONAL DIFFICULTIES
(INCL. BAD WEATHER AND/OR ADVERSE CLIMATE CONDITIONS) THROUGH THE
TURKISH STRAITS NORTH-BOUND AND SOUTH-BOUND IN EXCESS OF 24 HRS EACH
WAY,NON REVERSIBLE,THE CHARTERERS SHALL PAY COMPENSATION FOR SUCH
DELAY AT THE RATE
PROVIDED FOR DEMURRAGE.
ANY ADDITIONAL EXPENSES IN CONNECTION WITH COMPLYING WITH TRAFFIC
REGULATIONS AND/OR CHARTERERS' VOYAGE ORDERS AS REGARDS THE PASSAGE
OF THE TURKISH STRAITS TO BE FOR CHARTERERS' ACCOUNT (INCLUDING BUT
NOT LIMITED TO ADDITIONAL TUGS, PILOTS, ADDITIONAL BUNKERS CONSUMED -
WAITING OR ADRIFT ETC.).
TOTAL COST FOR DELAYS AND ANY ADDITIONAL EXPENSES TO BE PAID TOGETHER
WITH FREIGHT AGAINST MASTERS STATEMENT WITH SUPPORTING DOCUMENTS TO
FOLLOW IN DUE COURSE.OWNERS SHALL NOMINATE AGENTS FOR THE TURKISH
STRAITS PASSAGE.
```

# Vitol Voyage Chartering Terms,
# Effective October 2006

The following "Vitol Voyage Chartering Terms, October 2006" will remain in force throughout the duration of the Charter, together with any additional clause(s) or amendment(s) agreed between Charterer and Owner.

It is a condition that owners comply with all warranties and obligations in this charterparty and Owner further guarantees compliance with all conditions / warranties / obligations throughout the duration of this charter regardless of any change(s) in International and/or local regulations.

The Clause and sub-section headings contained in this Charterparty are for convenience of reference only and shall not affect the interpretation thereof.

## 1. General Terms.

a) BPVOY 4 Voyage Charter Party.

b) Ninety six (96) hours *Eighty Four (84)* Laytime allowance.

c) *Except as otherwise provided herein* freight covers the round voyage and is payable in United States Dollars to the Owner's nominated account by telegraphic transfer.

d) The negotiation and fixture to remain private and confidential at all times.

## 2. Amendments to the BPVOY4 (Owners amendments in blue are incorporated for the sake of continuity)

a) General amendments

(i) Delete all references to "BP Shipping Questionaire" and replace with "Q88 Questionnaire form Version 2 or any subsequent modification "

(ii) Any reference to telex(es) to be deemed to also be a reference to email(s)

(iii) All distances and any reference to additional distances to be assessed by refererence to online web-based "BP Shipping Marine Distance tables" produced by AtoBviaC.

(iv) delete the word "telex" insert "email"

*part i*

*line 55-56 insert "about" before the speed*

*line 81-82 delete*

*line 85 insert "84" hours*

*line 97-98 delete*


*part ii*

*line 150 after "undertaking" insert "unless otherwise agreed in main terms"*

*line 157 after "cargo" insert "weather and safe navigation permitting"*

*line 160 after "speed)," delete comma and insert fullstop. delete "as may be stated in charterers' voyage orders,"*
*line 165-181 delete*
*line 183 after "provisions" insert ","*
*line 187 after "arising" insert "directly"*
1 Vitol Voyage Chartering Terms – October 2006

*line 188 at beginning insert "upon receiving voyage orders"*
*line 188 after "telex" insert "or email"*
*line 194 after "(24) hours" insert "as applicable"*
*line 202 delete "by telex". insert "in writing by telex or fax or email"*
*line 204 delete "on even keel"*
*line 206 after "(24)" insert "where applicable"*
*line 212 delete "telexes (showing answer backs)" insert "messages"*
*line 217 after "orders" insert "within ranges agreed"*
*line 219 after "always" insert "reach, depart and lie"*
*line 238 after "time" insert "irrespective of weather"*
*line 247 after "port" insert "or customary anchorage or other waiting area"*
*line 251 after "facsimile" insert ", email,"*
*line 252 after "telex" insert "or email"*
*line 254 after "representative" insert "if such signature is obtainable"*
*line 268 after "within" insert "or out of"*
*line 269 after wait insert "or at a safe area as directed by port / terminal authorities*
*unless otherwise agreed between charterers and owners"*
*lines 270-276 delete*
*line 288 delete from "unless loading" until line 289 or "discharge port"*

b) <u>Line 294</u>
After "loading" insert "notwithstanding whether consent has been provided as per clause 6.2,"

c) <u>Line 296 - 297</u>
~~Delete from "unless" to "loading" inclusive.~~

*line 300 before "the time" insert "half"*

d) <u>Line 302</u>
Before "Laytime" insert "Except as provided for in 7.3.1".

*line 305-306 delete "commences loading, or discharging" insert "berths" line 310 delete "solely"*
*line 329 after "from" insert "(if only discharge/reload is conducted, such operations shall be billed in accordance with additional clause 34)" line 331 Insert "instead" after "may take place"*
*line 332 add at end: "with regards to safety always subject to master's discretion, not to be unreasonably withheld."*
*line 352 insert at the end "charterers and or their suppliers shall arrange at their expense and time all necessary ship-to-ship permits and licenses if required which shall be provided to owners prior commencement of ship-to-ship operations."*
*amend as follows*
*line 360 delete "have the right" and "to" after "expense," add "will" line 364 delete "An" insert "The first"*
*line 367 delete "an" insert "the first"*

2 Vitol Voyage Chartering Terms – October 2006

*line 371 insert "only one nor time of 6 hours per port will apply" line 380 after "and fenders" insert "and all of chrts equipment and personnel if applicable" line 402 delete "or the charter speed...the higher" line 415 delete from "subject to... " until line 417 "...and 18, the" line 418 insert "irrespective of weather/sea conditions" line 419 at end add "charterers shall have the right to maximum 1 x 6 hours notice time per port."*

e) <u>Line 423</u>

After "Vessel" insert "and it's officers/crew"

*line 426 add after "expense" "(excluding consequential loss, damage, cost or expense)" line 428 after "time" insert "lost"*

f) <u>Clause 11, Lines 449 to 456</u>

Delete entire clause. See clause 18 below

*line 494 delete "cargo" insert "slop" line 498 -500 delete "the master shall further advise...... tank containing slops" line 498 after "oil and water" insert "if required" line 511 after "representative" insert "if possible." line 541 add at end "agents to be competitive and approved by owners which not to be unreasonably withheld. In any event, agents suggested by chrts to have opportunity to match owners alternative bone fide quote." line 552 delete "forty-eight (48)" insert "twenty-four (24)" line 554 delete "charterers" insert "owners" line 556 delete "charterers may require" line 558/59 delete last sentence line 562 delete "ninety-six (96)" and insert "forty eight (48)". add "Saturdays" after "(". line 563 delete "forty-eight (48)" insert "twenty four (24)" line 569 delete "respond" insert "advise.*

*line 571 delete "ninety-six (96)" insert "forty-eight (48)"*

g) <u>Line 588</u>

After " delay" insert " after tendering NOR as per clause 6 and prior to disconnection of hoses as per clause 7.3.3."

3 Vitol Voyage Chartering Terms – October 2006

line 588 after "arising from" insert "awaiting daylight, tide," line 591 delete "in or about any" and insert "at" delete "facility" and enclose "excepting s-t-s…..barges" in brackets line 593 delete "one half" insert "full" line 595-596 delete "or their respective servants or agents." line 599 delete "spent or" and insert "when time is actually" line 600 delete "including" and delete "awaiting daylight, tide, opening of locks"

h) Line 601

~~After "locks," add " authority's clearance of vessel and/or crew.".~~

line 603-604 before "result" insert "direct" line 605 after "charterers" insert "or their agents" line 610 add at end, "where half time to count" line 612 delete "spent or" and insert "when time is actually"

i) Line 613

After "indirectly," insert " the ship arriving in the US without a valid TVEL,"

j) Line 621

After "in connection with," add "bunkering and/or"

k) Line 621 - 622

After "unless" delete "the discharging is"

line 652 after "vessel shall" delete "load" and insert "be capable of loading homogenous"

line 652-654 delete "and in any event shall load ………. part cargo," line 656 add at the end "and loading rate not restricted from the shore side" line 657 delete "discharge" insert "be capable of discharging" line 660 after "(24) hours" insert "excl stripping but max two hours" line 660 delete "full" insert "entire" line 661 delete "a minimum" and insert "an average but excluding stripping time" line 664 after pressure insert "and not restricted by shore side" line 672 after "(24) hours" insert "excl stripping but max 2 hours" line 673 delete "a minimum" insert "an average but excluding stripping time" line 675-676 delete "or failure…imposed by the terminal" line 684 after "washing" insert "and stripping" line 686 delete "which is discharged consecutively" line 690 delete "consecutively"

line 703 &705 delete "full" instead insert "entire" line 705 after "or at" delete "a" and insert "an average but excluding stripping time"

4 Vitol Voyage Chartering Terms – October 2006

*line 720 after "a terminal representative" insert provided that such signatures are available (if not then master to issue a letter of protest)," line 725 after "all other" insert "available relevant" line 726 delete "or by the terminal"*

l) <u>Line 735</u>

After "Marpol minimum standard" add "and in accordance with local and/or terminal regulations"

*line 742 delete "twenty-five per cent (25%)" insert "eight (8) hours for vessel with dwt up to 119,999 mts, ten (10) hours vessels with dwt 120,000-169,999 mts and twelve (12) hours for vessels with dwt of 170,000 mts and above."*

*Line 747-784 delete in full.*

*Line 784 Add at end of clause "19.10: Where references are made in this clause, 19, to "pro rata in the case of a part cargo", it is understood that in the case of multiple discharge (either by location or grade) owner is to be given credit for any overperformance, as measured against warranties given in clause 19, for discharge of other part cargo(es) carried under this charterparty"*

*line 785-798 delete and insert*

"CHARTERERS SHALL BE DISCHARGED AND RELEASED FROM ALL LIABILITY IN RESPECT OF ANY CLAIM WHICH OWNERS MAY HAVE UNDER THIS CHARTER UNLESS A CLAIM IN WRITING HAS BEEN PRESENTED TO CHARTERERS TOGETHER WITH SUPPORTING DOCUMENTATION SUBSTANTIATING THE CLAIM WITHIN 90 DAYS OF THE COMPLETION OF DISCHARGE OF THE CARGO CARRIED HEREUNDER. PROVIDED SUCH DOCUMENTS RECEIVED ON TIME"

*Line 809 delete*

m) <u>Line 813</u>

After "discharge port" add " and / or the vessel has tendered NOR,"

*line 816 after "locations" insert "at masters discretion which not to be unreasonably withheld" line 838 after "additional period" insert "(including time spent awaiting chrts instructions, unless accounted for under 22.2.2 or 22.2.3 above)" line 842 delete "average" and insert "charter"*

*line 842-844 delete "actually .... higher" line 845 after "additional distance" insert "based on consumption rate at charter speed and whilst waiting for chrts instructions" line 848 after "charterers" insert "at their own risk, time and expense"*

n) <u>Line 852</u>

After "samples " insert "(in the manner charterers representative considers fit and safe)". *After "samples" insert "(in the manner charterers representative considers fit and safe, but always subject to masters approval which not to be unreasonably withheld)"*

5 Vitol Voyage Chartering Terms – October 2006

line 859 add at end "charterers to issue loi releasing owners from liability with respect to such representative."

line 862 insert at end "with master's consent as to the safe operation is concerned not to be unreasonably withheld" line 873 after "such delay" insert "at demurrage rate" line 876 after "in respect of" insert "any" clause 24 maintenance of cargo temp delete in full for clean fixtures line 880 delete "up to" insert "but" delete "60c" and insert "135f" line 881 after "cargo" insert "loaded" delete "60c" and insert "135 f" line 882 after "of the cargo" insert a fullstop and delete "and that the" line 884 delete "required" insert "loaded" after "for any" insert "directly" line 886 after "and any" insert "direct" line 891 after "length of the voyage" insert ", weather and sea conditions" line 895 after "aforesaid" insert "against master's statement and owner's invoice supported by relevant documents" line 900 delete "single hull"

line 904-907 delete line 909 delete "the last bunkers lifted" insert "replacing same" line 910 delete "last bunkers lifted" and insert "replacement bunkers" line 916-918 insert at the end "permission for such not to be unreasonably withheld" clause 27 traffic separation an routing at the end of the clause insert 'freight payable basis actual laden voyage performed with most economical ballast, except where charterers and/or local authorities require vessel to proceed on a route other than the most economical, in which case such actual route to apply. specifically, the vessel will always be routed great belt/great belt and messina ballast and sicily laden" clause 28 ice on voyage & ice at load/disports at the beginning of the clause insert "vessel not to force any sort of ice nor follow ice-breakers nor call areas where light buoys are likely to be damaged due to ice and ice-like conditions at sea" line 941 delete "average" and insert "charter"

line 942-943 delete "actually ... higher" line 945 after distance insert "based on the consumption rate at charter speed and whilst waiting for chrts revised orders"

6 Vitol Voyage Chartering Terms – October 2006

*line 945-946 delete "last bunkers lifted" insert "replacement of same" line 962 delete "receipt" insert "vessels tendering of first valid nor"*
*line 967 insert at end "in case shifting is required time and bunkers (at replacement value) to be for charterers account"*

o) Clause 30.3, lines 991 to 1022

Delete and replace with BP indemnity clause (see clause 3 below) plus the following provision:

"Any indemnity so invoked shall automatically be null and void upon presentation of the relevant bill of lading, or 13 (thirteen) months after completion of discharge of cargo to which the indemnity is relevant". Delete "13 (thirteen)" insert "36 (thirty six)"
*line 1033-1053 delete*

p) Line 1055

~~Delete "final" and replace with "furthest"~~

*line 1057-1076 delete line 1079-1080 delete "2, and 33" line 1081-1083 delete "any sums payable by owners ......... under clause 35," line 1099 delete "deduct from freight" insert "claim from owners" line 1100 after "calculated" insert "and prorated"*
*line 1101 add at end "Unpumpables by fixed pumps shall not be considered retained cargo, provided the pumps are in good working order and the vessel is properly trimmed." line 1117 delete "deduction from freight" and insert "claim on owners"*

q) Line 1121

After "loading" insert " unless cargo has been loaded on top of slops as per clause 14.3"

r) Lines 1122 – 1125

Delete entirety of clause 33.6

*line 1132 before "upon" insert "along with freight" after "all" insert "available" delete invoices "documents" add at the end of the sentence "and owners invoice in respect of the same. original hard copies to be sent to charterers upon receipt from agents."*
*line 1135 delete "not"*
*line 1137 delte "such costs...agreed freight"*

s) Line 1139

7 Vitol Voyage Chartering Terms – October 2006

After "apply" insert " unless loading at /discharging in a port(s) expressly named in the charterparty *ports listed as boundaries for a range do not constitute expressly named ports.*"

t) Clause 35
Delete entire clause

u) Clause 36, lines 1150 to 1160
Delete entire clause and replace with clause 6 below (BP Unique Identifier Clause and US Bureau of Customs and Border Protection Clause)
*clause 37 uscg cofr / uscg regulations insert "applicable for US trade only" line 1183 add at beginning "neither owners nor" line 1183 delete "not" line 1188 delete "." and insert ", requisition, perils of the sea, pirates, act of public enemy enemies or assailing thieves." line 1263 delete "full" and insert "available"*

v) Line 1325
Delete "1994" and insert "2004"

w) Line 1375
Delete "US$500 million" and replace with "US$1 billion"
*line 1378-1379 delete "(currently us$ 200 million)"*

x) Line 1381
After "acceptable to charterers" add:
"44.2 *Upon specific request from charterers* Owners to provide Charterers with written evidence of (44.1.1) and (44.1.2) from their P and I Club within one normal working day of the day the fixture was confirmed and if the same is not so received, then Charterer shall have the option to either cancel the charter or extend the period by a further working day, and so on at Charterer's option."

y) Line 1392
After "P&I Clubs" insert " and be classified by an IACS Classification Society at the commencement and throughout the period of this charter"

z) Clause 48, lines 1421 to 1436
Delete entire clause. See VITOL CLAUSE 37 BELOW.

aa) Line 1440
After "arise out of" insert "or in connection with"
After "Charter" insert "involving amounts in excess of US$50,000. Any dispute arising out of or in connection with this charter involving amounts up to and including US$50,000 shall be resolved in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association"

~~3. BP Indemnity Clause (to replace Clause 30.3 of BPVoy 4)~~
~~If an original bill of lading is not available at any discharge port to which the Vessel may be ordered by Charterers under this Charter, or if Charterers require Owners to deliver cargo to a party or at a port other than as set out in the bill of lading, then Owners shall nevertheless discharge such cargo in compliance with Charterers' instructions, upon presentation by the consignee nominated by Charterers ("the~~

8 Vitol Voyage Chartering Terms – October 2006

~~Receiver")-of-reasonable-identification-to-the-Master-and-in-consideration-of-the~~
~~Charterers-providing, or-procuring-from-the-Receiver, a letter of-indemnity-addressed~~
~~to-the-Owners-in-the-form-agreed-and-published-from-time-to-time-by-the-International~~
~~Group-of-P&I-Clubs-in-respect-of-the-particular-circumstances.~~

*Insert:*

*3. Indemnity Clause (to replace Clause 30.3 of BPVoy 4)*

a) *If an original bill of lading is not available at any discharge port to which the Vessel may be ordered by Charterers under this Charter, or if Charterers require Owners to deliver cargo to a party or at a port other than as set out in the bill of lading, then Owners shall nevertheless discharge such cargo in compliance with Charterers' instructions, upon presentation by the consignee nominated by Charterers ("the Receiver") of reasonable identification to the Master.*

b) *In consideration of Owners complying on each occasion with such voyage/discharge instructions, the Charterer shall on each occasion have been deemed to have provided the Owner with a letter of indemnity ("the deemed letter of indemnity") addressed to the Owners in the form agreed and published from time to time by the International Group of P&I Clubs in respect of the particular circumstances.*

c) *The information given in such voyage/discharge instructions to the vessel, and the information stated in the Bill of Lading, shall be deemed incorporated in the deemed letter of indemnity. If there is any conflict between the information in the voyage/discharge instructions, the following rules shall apply:-*

i. *Voyage – ( this shall be the load and discharge ports as stated in the bill of lading)*

ii. *Cargo (this shall be the cargo as described in the bill of lading)*

iii. *Bill of lading (this shall be the identification numbers, date and place of issue shown on the bill of lading)*

iv. *receiver's name ( this shall be the name of the consignee on the bill of lading or party to whose order the bill of lading is made out, as appropriate)*

v. *shipper's name (this shall be the name of the shipper as stated in the bill of lading)*

d) *No further additional telex or otherwise written advice from Charterers to Owners shall be required to invoke this deemed letter of indemnity.*

e) *Any deemed letter of indemnity so invoked shall automatically be null and void upon presentation of the relevant bill of lading, or 3 years after completion of discharge of cargo to which the indemnity is relevant.*

## 4. BP Regulatory and Guideline Compliance Clause

Throughout the period of this Charter, the Owners and the Vessel shall comply with all relevant regulations and guidelines issued by the IMO and OCIMF and, in the case of a Vessel carrying LPG or LNG, with the recommendations and guidelines issued from time to time by SIGTTO. In addition, all operations shall be carried out in

accordance with ISGOTT 1996, and any amendments thereto issued from time to time.

## 5. BP ISM Clause

9 Vitol Voyage Chartering Terms – October 2006

a) Owners undertake that for the duration of this Charter, the Vessel and "the Company" (as defined in the International Management Code for the Safe Operation of Ships and for Pollution Prevention (the International Safety Management (ISM) Code) (the "ISM Code")) shall comply with the requirements of the ISM Code. Charterers may at any time request an inspection of the relevant Document of Compliance and/or Safety Management Certificate, and upon receipt of such a request Owners shall forthwith provide the same.

b) Without prejudice to any rights or remedies available to Charterers under the terms of this Charter or under the law applicable hereto, in the event of a breach of the above undertaking any loss, damage, expense or delay following there from shall be for Owners' account.

## 6. BP Unique Identifier Clause and US Bureau of Customs and Border Protection Clause

a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Owners shall comply with the current US Customs regulations (19 CFR 4.7 and 178) or any subsequent amendments thereto and shall (unless Charterers request otherwise) undertake the role of carrier for the purposes of such regulations and shall:

(i) have in place a SCAC (Standard Carrier Alpha Code) and insert the same on each bill of lading;

(ii) have in place an ICB (International Carrier Bond);

(iii) submit cargo declarations by AMS (Automated Manifest System) to the US Customs; and

(iv) provide Charterers and Agents on request with details of the Unique Identifier in respect of all cargo carried

b) The Charterers shall provide all necessary information to the Owners and/or their agents to enable the Owners to submit a timely and accurate cargo declaration.

c) Owners warrant that they are aware of the US Bureau of Customs and Border Protection regulations for entering US ports (the "CBP Regulations"), including but not limited to those regulations issued on December 5th 2003 under Federal Register Part II Department of Homeland Security 19 CFR Parts 4, 103, et al, and Owners further warrant that they will comply fully with the CBP Regulations.

d) The Owners shall assume liability for and shall indemnify, defend and hold harmless the Charterers against any loss and/or damage (excluding consequential loss and/or damage) and any expenses, fines, penalties and any other claims, including but not limited to legal costs, arising from the Owners' failure to comply with any of the provisions of sub-clause (a) or failure to comply with the CBP Regulations, provided always that Charterers have, within a reasonable period after being requested by Owners, provided them with such information as is reasonably required to enable them to comply with the CBP Regulations. Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, the period of such delay shall not count as laytime or, if the Vessel is on demurrage, as demurrage.

e) The assumption of the role of carrier by the Owners pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

10 Vitol Voyage Chartering Terms – October 2006

## 7. BIMCO ISPS/MTSA Clause for Voyage Charter Parties 2005

a) (i) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

b) (i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA.

(ii) Loss, damages or expense (excluding consequential loss, damages or expense) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party, and any delay caused by such failure shall count as laytime or time on demurrage.

c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code/MTSA, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code/MTSA.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code/MTSA shall count as laytime or time on demurrage, unless such measures result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers.

d) Notwithstanding anything to the contrary provided in this Charter Party, any costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' acccount, unless such costs or expenses result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

## 8. Eligibility

11 Vitol Voyage Chartering Terms – October 2006

It is a condition that from the date of delivery and throughout the charter period, the Vessel is completely free to trade both within the current Institute Warranty Limits and to any port within the ranges agreed in clauses E and F and is not in any way listed and/or considered as unacceptable and/or banned and/or prevented by any *relevant entity among the following* Government or other organization whatsoever, port authority, customs authority, coastguard, ITF, or equivalent, and where compulsorily applicable the Vessel shall have and where required, have on board, all necessary certificates/documentation so as to be able to trade to any port within these agreed ranges. ALWAYS IN ACCORDANCE WITH HER NATURAL AND DESIGN CHARACTERISTICS

## 9. Oil Company Approvals

~~To the best of their knowledge Owner warrants that the vessel has the following major oil companies approvals.................................... Such approvals shall remain valid throughout the charter period.~~

## 10. Criteria for Vessels Over 20 Years of Age

Vessels aged over 20 years of age must satisfy either of the following two criteria: -
a) The vessel must form part of a fleet which has been managed for a period of not less than three years by the same management and with a minimum number of five vessels under management at any one time, or
b) The vessel must form part of a fleet which has been owned for a period of not less than three years by the same registered owner, with a minimum of three vessels under ownership at anyone time.

## 11. War Risk Additional Expenditure

~~a) Charterer is under no circumstances whatsoever to be liable for any loss, damage or expense which is, or could be, covered by war risks insurance available commercially.~~

~~Increase of hull and machinery 'War Risk Premiums' and 'Crew War Bonus' over and above those in effect on the date of the Charterparty, will be for Charterer's account.~~

~~b) Charterers shall reimburse Owners for such increases in war risk premiums, crew war bonuses which are reasonably incurred by Owners, provided that Charterers are given notice of such expenses as soon as practicable and, in any event, before such Additional Premium and Crew bonuses are incurred, and provided further that Owners obtain from their insurers a waiver of any subrogated rights against Charterers in respect of any claims by Owners under their war risk insurance arising out of compliance with Charterers orders.~~

~~c) Any payments under this clause will only be made against proven documentation. Any discount or rebate refunded to Owners, for whatever reason, in respect of additional war risk premium shall be passed on to Charterers.~~

~~d) If the Charterer can obtain a more competitive rate for such Additional premium, which Owners cannot match, then the Owner shall allow the Charterer to arrange such additional cover, with first class insurers, on behalf of Owner. If the Charterer arranges such insurance the Charterer shall confirm~~

12 Vitol Voyage Chartering Terms – October 2006

~~cover latest 24 hours before the vessel is due to be exposed to the risk so insured.~~
~~e) For the purposes of this Clause, Crew Bonuses are defined as mandatory~~
~~payments imposed by the Government or State under whose flag the Vessel sails, or~~
~~other Government to whose laws Owners are subject, or any body or group acting~~
~~with the power to compel compliance with their orders or directions. Any voluntary~~
~~bonus paid by Owners to the Officers and/or crew in respect of the voyage performed~~
~~pursuant to this contract shall be for Owners' account. For the avoidance of doubt~~
~~any "blocking and trapping", "loss of profit", "loss of hire", "loss of freight" or "loss of~~
~~bunkers" insurance taken out by Owners in respect of the Vessel, and any additional~~
~~premium relating thereto, arising from Charterers trading of the Vessel, shall be for~~
~~Owners' account.~~
~~f) For the purposes of this clause, a war risk area will constitute that which has been~~
~~recognized by Lloyd's of London as such an area. In addition, any increase in~~
~~insurance premiums to be limited to that commercially available in the London~~
~~insurance market.~~
*Insert:*

*owners shall effect war risks insurance in respect of the hull and machinery of the vessel and their other interests (including, but not limited to, loss of earnings and detention and their protection and indemnity risks), and the basic premiums and/or calls therefore shall be for owners' account.*

*war risks insurance additional premiums, crew war bonus and insurance, and additional expenses directly incurred as a result of the vessel entering or transitting an excluded area shall be for charterer's account, net of all discounts or rebates received by owners and provided always that charterers are given an indication of the expected additional premium as soon as possible. Insert at end "and, in any event, before such Additional Premium and Crew bonuses are incurred, and provided further that Owners obtain from their insurers a waiver of any subrogated rights against Charterers in respect of any claims by Owners under their war risk insurance arising out of compliance with Charterers orders."*

*the benefit of discounts or rebates on additional premium received by owners from their war risks insurers, underwriters or brokers shall be credited to charterers in full.*

*charterers shall reimburse owners any amounts due under this clause upon receipt of owners' invoice together with reasonable supporting documentation including all associated debit and credit notes (if any).*

*for the avoidance of doubt any specific "blocking and trapping", "loss of profit", "loss of hire", "loss of freight", or "loss of bunkers" insurance taken out by owners in respect of the vessel, and any additional premium relating thereto arising from charterers' trading of the vessel shall be for owners' account.*

## 12. ~~BP~~ In-Transit Loss Clause

In addition to any other rights which Charterers may have, Owners will be responsible for the full amount of any in-transit loss if in-transit loss exceeds ~~0.3~~ 0.5% by volume and Charterers shall have the right to ~~deduct from freight~~ *claim from owner* an amount equal to the FOB loading port value of such cargo plus freight and insurance due with respect thereto. In-transit loss is defined as the difference between net Vessel standard volumes after loading at the loading port and before unloading at the discharge port. Volume of cargo to be ascertained at loading port and discharge port by independent inspectors appointed by Charterers whose findings are to be final and binding on both parties save for instances of arithmetical error in calculation.

13 Vitol Voyage Chartering Terms – October 2006

*line 3 delete "deduct from freight" insert ""*

## 13. Third Party Arrest

In the event of arrest/detention or other sanction levied against the vessel through no fault of Charterer, Owner shall indemnify Charterer for any damages, penalties, costs and consequences and any time vessel is under arrest/detained and/or limited in her performance is fully for Owner's account and/or such time shall not count as laytime or if on demurrage, as time on demurrage.

In the event of arrest/detention or other sanction levied against the vessel through no fault of Charterer, Charterer shall be entitled, in Charterer's option, to terminate the Charter. Termination or failure to terminate shall be without prejudice to any claim for damages Charterer may have against Owner.

## 14. Operational Compliance

a) <u>Adherence to voyage orders</u>

Owners shall be responsible for any delay, loss, damage, costs or expense arising out of any failure to comply with Charterers' Voyage Orders. If at any time it appears to the Master that it may not be possible to comply with Charterers' Voyage Orders, he shall immediately contact Charterers for instructions. *Voyage orders always to be lawful and within the scope of this charter party*

b) <u>Breakdown / rejection</u>

Should after tendering a valid NOR Vessel subsequently suffer, any breakdown of her machinery or equipment and/or be rejected for loading and/or discharge because of Vessel's condition and/or breach of any condition/obligation/warranty under this Charterparty, all *direct* losses, *direct* expenses including but not limited to un-berthing and re- berthing costs shall be for Owner's account and all time until cargo operations are (re)commenced is not to count as laytime, or if vessel is on demurrage, as time on demurrage.

c) <u>Remeasurement</u>

At Charterers request, Owner to remeasure deadweight of the vessel. ALL COST TO BE FOR CHARTERERS ACC AND PAID TOGETHER WITH FREIGHT AS PER SUP DOCS RCVD FM OWNERS

## 15. Vacuum Gasoil (VGO)/ Low Sulphur Waxy Residue (LSWR)

If loading VGO or LSWR and the previous cargo was fuel oil, marine diesel oil, VGO or gasoil, it is essential that no tank cleaning is performed prior to loading except to ensure that all tanks, lines and pumps are stripped dry and drained of any previous cargo and that R.O.B./O.B.Q. should not exceed 0.1 per cent of cargo quantity and that these should not contain water.

After all other cargoes, the following tank cleaning must be performed.

a) Hot machine-wash all tanks designated to carry VGO/LSWR (water pressure 150 psi, temperature 150 degrees Fahrenheit).

b) Strip tanks completely dry and drain all lines and pumps of water.

c) (i) Thoroughly wash all tanks, lines and pumps designated for VGO/LSWR with fresh water to eliminate all traces of salt water.

(ii) Drain pumps and lines.

(iii) Dry out tanks.

d) Irrespective of previous cargo, where salt water ballast has been loaded into cargo tanks designated for VGO/LSWR, the vessel shall:

14 Vitol Voyage Chartering Terms -- October 2006

(i) On completion of de-ballasting strip tanks dry.
(ii) Drain pumps and lines.
(iii) Fresh water rinse all salt water contaminated tanks, lines and pumps.
(iv) Drain pumps and lines.
(v) Dry out tanks.
(vi) Where possible, load first into tanks which previously contained ballast to at least 25 pct full before switching to other tanks.
e) Regardless of previous cargo, prior to loading, all heating coils must be blown through with steam to ensure there is no entrapment of salt water through heating coil leakage.
f) Heating: Throughout the voyage and discharge, the vessel should maintain loaded temperature or a temperature of plus 15 degrees Celsius higher than cargo pour point whichever is higher.

## 16. Commingling

~~Charterer to have the right to commingle and/or circulate the cargo in vessel's tanks and/or add cargo additives (including but not limited to dye, pour point depressant, anti static additives, metals deactivators and H2S scavengers) and Master to execute this operation (these operations) as per Charterer's instructions subject to ship's safety.~~

*Insert:* COMMINGLE / BLENDING CLAUSE
OWNERS AGREE IF SO REQUESTED TO INSTRUCT MASTER TO COMMINGLE/BLEND THE CARGO/CARGOES LOADED ON BOARD ALWAYS IN STRICT COMPLIANCE WITH SAFETY RULES AND SUBJECT TO THE TECHNICAL CHARACTERISTICS, LIMITATIONS AND CAPABILITIES OF THE VESSEL. IF COMMINGLING/BLENDING ON BOARD IS EFFECTED PURSUANT TO CHARTERERS REQUEST, OWNERS NOT TO BE HELD RESPONSIBLE FOR THE RESULT AND CHARTERERS TO KEEP OWNERS HARMLESS AND FULLY INDEMNIFIED AGAINST ALL CLAIMS FOR CONTAMINATION OR QUALITY DETERIORATION OR ANY OFF SPEC WHATSOEVER. IN ANY EVENT CHARTERERS BEFORE ANY BLENDING/COMMINGLING IS PERFORMED
MUST PROVIDE OWNERS WITH AN LOI FOR ABOVE COMMINGLING/BLENDING OPERATION IN OWNERS WORDING. LOI ALWAYS TO BE SIGNED BY AN AUTHORISED OFFICER OF THE CHARTS.


## 17. Blending

~~Charterer to have the additional option of discharging part or all cargo in one safe port and reloading same port for further discharge within the same port and/or port(s) within the agreed ranges. Time at the discharge/reload port to count as laytime or if vessel is on demurrage, as time on demurrage in accordance with Charterparty terms~~

16 Vitol Voyage Chartering Terms – October 2006

~~and conditions. Freight always to be based on the highest Bill of Lading quantity(ies)~~
~~carried on any one part of the voyage or the minimum quantity as per Charterparty,~~
~~whichever is the greater. Where final discharge is at a port other than the~~
~~discharge/reload port the discharge/reload port to be considered as additional~~
~~loadport for freight calculation purposes.~~
*Delete – refer to Clause 16 above.*

## 18. Inspection/Cleaning

a) The Owner shall clean the tanks, pipes and pumps of the Vessel to the satisfaction of the Charterer's Inspector who shall inspect the Vessel as per local and/or Charterer's requirements prevailing at the time.
*line 1 delete "clean" insert "prepare"*
*line 2 delete "the charterer's" insert "an independent*

b) Notwithstanding whether or not the Vessel arrived and tendered NOR within laydays and notwithstanding any previous decision not to cancel the Charter, should, after inspection, the Vessel not be clean to the satisfaction of Charterer's Inspector, the Charterer shall have the option of canceling this Charter by giving Owner notice of such cancellation within 24 hours after rejection of the Vessel by Charterer's Inspector.
*line 4 delete "charterer's" insert "the independent"*

c) Alternatively, should the Charterer still decide not to cancel this Charter, despite the Vessel not being clean to the satisfaction of Charterer's Inspector, the Vessel will be required, at Owner's risk, time and expense, to carry out further cleaning, per (i) above, and represent for further inspection by Charterer's Inspector.
*lines 2 and 5 delete "charterer's" and insert "independent"*

d) Should, after further inspection, the Vessel still not be clean to the satisfaction of Charterer's Inspector, the Charterer shall have the option to either cancel the Charter, as per (ii) above, or to request further cleaning, as per (iii) above, and so on at Charterer's option.
*line 2 delete "charterer's" and insert "independent"*

e) Owner shall indemnify Charterer for all direct and/or indirect delays, costs and consequences as a result of the Vessel not being clean to the satisfaction of Charterer's Inspector and should the Charter not be cancelled, all time, without exception, until connection of hoses, after the Vessel has been passed as clean to the satisfaction of Charterer's Inspector, shall not count as laytime, or if on demurrage, as time on demurrage.
*line 1 delete "and/or direct"*
*line 3 delete "charterer's" and insert "independent"*

## 19. Speed

~~Charterer shall also have the option to request the vessel to reduce her speed on~~
~~laden passage. Additional voyage time shall count against laytime or time on~~
~~demurrage, if vessel is on demurrage and the value of any bunkers saved shall be~~
~~deducted from any demurrage claim Owner(s) may have under this Charterparty with~~
~~the value being calculated at replacement price.~~
~~Owner shall provide documentation to fully support the claims and calculations under~~
~~this clause.~~

## 20. BP Ballast Water Management Clause

17 Vitol Voyage Chartering Terms – October 2006

Owners warrant that the vessel shall comply with all mandatory ballast water requirements. The Owners shall assume liability for and shall indemnify, defend and hold harmless the Charterers against any loss and/or damage (excluding consequential loss and/or damage) and any expenses, fines, penalties and any other claims, including but not limited to legal costs, arising from the Owners' failure to comply with any such provisions. Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, the period of such delay shall not count as laytime or, if the Vessel is on demurrage, as demurrage.

## 21. BP Bunker Fuel Sulphur Content Clause

a) Owners warrant that the Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with the requirements of any Emission control zone.

b) "Emission control zone" is understood to mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

## 22. BP Weathernews Monitoring Clause

In Charterers' option, laden and ballast voyages may be monitored by WNI Weathernews or any other independent meteorological service who may report Vessels' ETA(s) and position to Charterers. If Charterers exercise this option, the Master shall co-operate fully with WNI Weathernews or other independent meteorological service as the case may be, but shall not be relieved of responsibility for giving any ETA or other notices in accordance with the terms of this Charter, including but not limited to Clause 4, Part 2.

## 23. South East Asia

a) ~~South Korean Laytime.~~

~~If the vessel is required to call at South Korean port(s), should the vessel arrive at quarantine station and tender NOR between 3 hours before sunset and 0100 hours the next day, laytime, or time on demurrage, if vessel is on demurrage, shall count from 0700 hours the next day.~~

b) South Korean Anchor Dues.

South Korean Anchorage dues in excess of ~~72~~ 48 hours to be for Charterer's account.

c) Korean/Japanese Speaking Superintendents

If the vessel is required to call at Korean/Japanese port(s) and if so requested by Charterers, Owners are to send, at their cost, a Korean/Japanese speaking superintendent to assist and co-ordinate the safe operation for the vessel to discharge at such nominated port(s).

d) ~~Singapore/Tanjung Pelepas/Karimun/Pasir Gudang Blending~~

~~Charterer to have the additional option of discharging part or all cargo in one safe port and reloading at same port or another port within the Singapore/Tanjung Pelepas/Karimun/Pasir Gudang range for further discharge within the same port and/or port(s) within the Singapore/Tanjung Pelepas/Karimun/Pasir Gudang ranges. Time at the discharge/reload port to count as laytime or if vessel is on demurrage, as time on demurrage in accordance with Charterparty terms and conditions. Freight always to be based on the highest Bill of Lading quantity(ies) carried on any one part of the voyage or the minimum quantity as per Charterparty, whichever is the greater. Where final discharge is at a port other than the discharge/reload port the~~

18 Vitol Voyage Chartering Terms – October 2006

~~discharge/reload port to be considered as additional loadport for freight calculation purposes.~~
*Refer to Clause 34 below.*

## 24. General strike
All delays in australia/india/nigeria/france/spain/scandinavia due to strike or lockout or restraint of labour to count as full laytime or as demurrage if the vessel is on demurrage.
Time shall not count when strike is of vessel's master, officers or crew.

## 25. Overage Insurance
Overage insurance, if any, to be for charterer's account. Any premiums due to vessels age/class or flag to be for charterers account.

## 26. Panama Canal
Max 24 hrs waiting for Panama Canal transit to be for owner's account, thereafter for charterers account. Any additional waiting time shall count against laytime or, if the vessel is on demurrage, as time on demurrage.

## 27. Turkish Straits
Any delay in passing the turkish straits (dardanelles and borsphorus) northbound and southbound in excess of 12 hrs northbound and 24 hrs southbound accumulated hours to be for charterers account unless already covered by worldscale and to count demurrage rate plus the cost of bunkers ifo+mdo consumed during such additional time together with any additional expenses incurred during such period to be for charterers' account and to be payable against owners invoice with available supporting documents together with the freight. Owners to appoint their agents, when passing the turkish straits.
Notwithstanding anything elsewhere herein contained, in case the vessel not to be able to arrive at loadport by the cancelling date due to delay in passing turkish straits, charterers' option to cancel as provided elsewhere herein can not be exercised.
owner to notify charterer of the date and time that they expect the vessel to be ready to load based on the advisory position given by the traffic control. – DELETE SEE MAIN TERMS ABOVE

## 28. Taxes and Dues
Taxes and/or dues on cargo and/or freight to be for charterer's account subject to owner's right to exemption from same and unless covered by worldscale. Time Bar Clause 20 not to apply to this clause.

## 29. Royal Portbury Dock
If vessel discharges at Royal Portbury Dock any taxes and/or dues on cargo and/or freight to be for charterer's account and settled directly by them. It is understood if vessel discharges Royal Portbury Dock, ships dues as levied on cargo discharged (ie usd 2,46 pmt) to be for Charterer's account and payable directly by them) port charge at Royal Portbury Dock total max usd 40,000 to be for Owner's account thereafter Charterer's account.

## 30. Mississippi River
Vessel to tender notice of readiness at river mouth (pilot station) for the purpose of time counting only and time waiting and shifting from that position until all fast at berth and from cleared berth until passing river mouth (pilot station) outbound shall count as full laytime or if the vessel on demurrage as full demurrage, less theoretical distance calculated at c/p speed.

19 *Vitol Voyage Chartering Terms – October 2006* 20

## 31. Arbitration
General Average and arbitration to be conducted in London and English Law to apply. The arbitrators shall be members of the London Maritime Arbitrators Association ("LMAA") and LMAA rules to apply. For claims under US$ 100,000 the LMAA small claims procedure to apply. .



**32. WS Page D-8** In situations where certain expenses have not been accounted for in the worldscale flat rate, and worldscale page d-8 calls for specific allocation in the contract, such expenses shall be for charterers' account. .

**33. Documentation** If vessel is delayed for more than three hours, after hoses have been disconnected, for charterers' purpose or awaiting documentation time to count in full from the time the three hours have expired. .

## Clause 34. Discharge/Reload; Dyeing; Interim Port(s) / delete

## 35. West Africa

Maximum USD 10,000 port expenses, including agency fee(s) at load/discharge port to be for owner's account, thereafter for charterer's account.

Any delays in obtaining Nigerian task force permission to enter or leave Nigerian waters to count in full as used laytime or full time on demurrage.

Any taxes and/or dues and/or levies on cargo and/or freight to be for chrts' account, including but not limited to gabonese/congolese council/shipper's tax, Nigerian conservancey dues, Nigerian harbour dues, oil terminal dues, wharfage, NMA (National Maritime Authority) fees, maritime fund for Mowca, and any other items listed in worldscale as being for charterer's account.

any delays in nigeria due to lockouts, strikes, restraints, work to rule, go-slow and any delays due to breakdown/failure/inefficiency of machinery and/or equipment in or around supplier/receiver's facilities to count in full as laytime or demurrage.

If discharge at Nigeria, and vessel is delayed and incures demurrage for any reason whatsoever, upon expiry of 3 days, demurrage becomes payable on account every 7 days thereafter.

## 36. Weather and Weather Ports

Conoco weather port clause to apply to this clause except as elsewhere provided; and if discharging Fiumicino, Falconara, Ravenna, Gela, La Nouvelle, Spanish Atlantic, Portugal, Quintero Bay, Mohammedia and/or if lightering/lightening, transhipment takes place or if loading/discharging via a sealine, sbm, spm, any delays due to weather conditions including fog to count in full as laytime or demurrage if vessel on demurrage and any unberthing, reberthing expenses due to weather conditions at the above mentioned ports/places to be for charterers account.

22 Vitol Voyage Chartering Terms -- October 2006

## 37. Administration

In addition to the fixture recap a formal written Charterparty, duly signed by Owner, will be required by Charterer (unless specific advice is given to the contrary by Charterer) evidencing the agreed terms and conditions of this Charterparty. However, once this Charterparty has been fully executed and no claims remain outstanding between Owner and Charterer under this Charterparty, there shall be no obligation on Charterer to return a formal written and signed Charterparty to Owner.

+++++ END +++++

EXHIBIT B



CLYDE&CO

Demurrage & Laytime Department

| | |
|---|---|
| Vessel: | BIC Imi |
| Date: | 16-Apr-09 |
| Charterer: | Holt Gobal Ltd |
| Owners: | TTMI Sarl |
| Case No | 501624 |
| Author: | MZL |

| | |
|---|---|
| Load Port: | STS Tropic Brilliance |
| Discharge Port: | Singapore |
| Cargo: | Fuel Oil |
| Laytime Allowed: | 84 Hours |
| Arrival Load Port: | 21/02/2009 19:00 |
| Complete Load Port: | 28/02/2009 02:20 |
| Arrival Discharge Port: | 27/03/2009 06:00 |
| Complete Discharge Port: | 05/04/2009 21:13 |

| | | |
|---|---|---|
| Demurrage: | | $25,000.00 USD/day |
| Laycan: | | 24-26/02/09 |
| Charterparty: | BPVoy 4 with Holt Terms | |
| C/P Date: | 13/02/2009 | |
| B/L Date: | 27/02/2009 | |
| Commissions: | | 2.50 % |

| | |
|---|---|
| Time Used at Load Port: | 04 Days 02:19 Hours:Mins |
| Time Used at Discharge Port: | 09 Days 07:08 Hours:Mins |
| Total Time Used: | 13 Days 09:27 Hours:Mins |
| Time Allowed: | 03 Days 12:00 Hours:Mins |
| Demurrage | 09 Days 21:27 Hours:Mins x $25,000.00 = $247,343.75 |

| | | |
|---|---|---|
| | Demurrage: | $247,343.75 |
| Less Monies on account: | | $217,670.80 |
| Commissions: | 2.50 % | $6,183.59 |
| | Total: | $23,489.36 |

CLYDE&CO Demurrage and Laytime Department

**Vessel Name** B.C.Trini
**C/P Form** BPVoy 4 with Holt Terms
**Dem. Rate** $25,000.00
**Time Allowed** 42 Hours

C/P Dated 13/02/2009

**Load Port:** STS Tropic Brilliance

| Date & Time | Remarks | Use | Time Used |
|---|---|---|---|
| 21/02/2009 19:00 | V/L Arrived STS Location | | |
| 21/02/2009 20:00 | NOR Tendered | | |
| 24/02/2009 00:01 | Start of Laycan | | |
| 27/02/2009 20:30 | Hoses Disconnected | x | 92 Hrs 29 mins |
| 28/02/2009 02:20 | V/L Cast Off | x | 5 Hrs 50 mins |

**Deductions**

| Date & Time | Remarks | Use | Time Used |
|---|---|---|---|
| | | | |

Load Port time used inc deductions    98 Hrs 19 mins

Total Time Used inc deductions    98 Hrs 19 mins

Loadport - STS Tropic Brilliance

CLYDE&CO Demurrage and Laytime Department

| | |
|---|---|
| **Vessel Name** | BIC Trini |
| **C/P Form** | BPVoy 4 with Holt Terms |
| **Dem. Rate** | $25,000.00 |
| **Time Allowed** | 42 Hours |

C/P Dated 13/02/2009

**Discharge Port:**  Singapore

| Date & Time | Remarks | Use | Time Used |
|---|---|---|---|
| 27/03/2009 06:00 | E.O.S.P / V/L Arrived PEBGrb" | | |
| 27/03/2009 07:00 | V/L Anchored / NOR Tendered | | |
| 27/03/2009 10:20 | Anchor Aweigh | | |
| 27/03/2009 14:05 | All Fast Universal Jetty #1 | | |
| 05/04/2009 21:13 | Cast Off "Titan Scorpio" | × | 223 Hrs 8 mins |

**Deductions**

| Date & Time | Remarks | Use | Time Used |
|---|---|---|---|
| | | | |

Discharge Port time used            223 Hrs 8 mins

Total time used inc. deductions            223 Hrs 27 mins

Discharge Port - Singapore